344 P.2d 478

Melvin MEAD, Plaintiff-Appellee,

v.

Jerry O'CONNOR, Defendant-Appellant.

No. 6498.

Supreme Court of New Mexico.

Sept. 25, 1959.

172

Hilton A. Dickson, Jr., Atty. Gen., B. J. Baggett and Philip R. Ashby, Asst. Attys. Gen., for appellant.

McKenna & Sommer, Santa Fe, for appellee.

COMPTON, Justice.

Appellee, plaintiff below, brought this action for damages in which he charges that appellant unlawfully, wilfully, and maliciously assaulted him at "Phil's Bar" in Chama. Issue was joined; and, as a further defense, appellant asserted that he was a member of the New Mexico State Police; that the acts complained of were performed by him in the discharge of his official duties as a conservator of the peace, and that excessive force was not used while thus performing such duties. The cause was tried to a jury and appellee was awarded $6,000 compensatory and $1,000 punitive damages. Judgment was entered on the verdict and the cause is here for review of alleged errors.

Appellant complains (a) of the ruling of the court in denying his motion for a directed verdict made when appellee rested, and later renewed at the close of the case; (b) of the action of the court in submitting to the jury the question of punitive damages; and (c) the refusal of a certain tendered testimony. We will dispose of the questions presented in like order.

The motion for a directed verdict is a challenge to the sufficiency of the evidence to support the allegations of the complaint. We deem the evidence substantial. The following facts appear from the record: Appellee was working in the Chama area as a "logger". About 12:30 a. m. on the night of November 25, 1956, he went to a bar in Chama known as Phil's Bar. Due to the time there were only a few customers present. A few minutes later appellant arrived. Shortly thereafter, the parties engaged in general discussion in which appellee addressed some derogatory remarks to appellant; these remarks will be mentioned later. It is enough to say that appellee's conduct was such that appellant concluded that he was drunk and disorderly. He caught appellee by the arm and escorted him from the bar, told him to go home and then closed the door. Appellee did not leave the premises, he returned immediately and as he opened the door as if to reenter, appellant caught him by the side and shoulder and threw him in a twirling motion onto the pavement, a distance of some four feet from the door. Appellee landed with such force that both bones of the left leg were broken, the tibia and fibula. The bones were badly shattered, one protruding through the skin. There is no evidence that appellee resisted appellant in any manner.

 It is obvious that the real issue in the case raised by the motion was wheth--

er or not under the facts here present the defendant, being a state police officer in the performance of his duties, was liable for assault. Subject to the limitation set forth in Padilla v. Chavez, 62 N.M. 170, 306 P.2d 1094, in attempting to arrest plaintiff for a misdemeanor or in conserving the peace, defendant was entitled to use such force as was reasonably necessary under all the circumstances of the case. Officers, within reasonable limits, are the judges of the force necessary to enable them to make arrests or to preserve the peace. When acting in good faith, the courts will afford them the utmost protection, and they will recognize the fact that emergencies arise when the officer cannot be expected to exercise that cool and deliberate judgment which courts and juries exercise afterwards upon investigations in court. However, it devolves upon the jury, under the evidence in the case and proper instructions of the court, to resolve these questions. Compare Davidson v. Allam, 1925, 143 Va. 367, 130 S.E. 245.

■ Viewing the evidence in an aspect most favorable to the appellee, we must conclude that there was ample evidence to submit to a jury and the court did not err in denying the motion.

■ Appellant's second point relates to the submission of an instruction as to punitive damages. His objection does not go to the form of the instruction given; rather, he contends that there was no basis for an instruction on that issue. The question, therefore, is whether there is evidence of a substantial character that appellant's acts were wilfully and maliciously motivated.

Again, turning to the record, it appears that shortly after appellant entered the bar, a discussion arose as to the amount of liquor a person could consume daily and still work. It is here appellee interjected the derogatory remarks, previously mentioned. Appellant's version of the remarks is as follows: "He stated to me a man could drink it if he worked as hard as Mr. Mead (appellee) did and not riding on our fat so and so's in a police car." Appellant admitted he was angered by the statement. Further, appellant and a Mr. Judson were discussing farming, milking of cows, etc., and appellee again abruptly spoke up and said to appellant: "The only * * * you ever squeezed were the women in * * *" Appellant testified the latter remarks did not offend him; yet, it was at this moment that he concluded appellee was drunk and disorderly and escorted him out of the bar. Further, as appellee attempted to reenter the bar, appellant said to him "I have taken all the * * * I am going to," took hold of appellee and threw him onto the pavement as previously related. We think the in-

struction was warranted by the evidence. Whether the statements motivated appellant's acts of violence afforded ample basis for the instruction. Faubion v. Tucker, 58 N.M. 303, 270 P.2d 713; Colbert v. Journal Pub. Co., 19 N.M. 156, 142 P. 146.

■ The final point relates to the attempted impeachment of appellee. Appellant's theory of the case was that he arrested appellee and escorted him from the bar because he was drunk and disorderly. On cross-examination, he asked appellee why he drank whiskey. He replied that he rarely drank whiskey, "very, very little." Appellant seized upon this statement to impeach the credibility of the witness by Freddie Martinez, a state policeman. He made a tender of the policeman's testimony but it was refused. The tender was to the effect that Martinez would testify that he had seen appellee in various bars drinking whiskey in large quantities; that he had observed him drinking as much as one pint to one quart at one sitting and that such drinking had continued over the period of time that he had known appellee. The court's refusal of the tender is urged as prejudicial error. We are not impressed by this claim of error. Admittedly, Officer Martinez had never seen appellee until some seven months after the alleged assault. Since the tendered testimony did not purport to cover appellee's drinking habits, particularly of whiskey, at the time of the assault, the attempted impeachment was on a collateral issue. What his drinking habits were at the time of trial was immaterial. See Morgan "Basic Problems of Evidence," 1957 Ed. pp. 183–184. Also see 20 Am.Jur. "Evidence" § 302.

■ Further argument is made that the tender was admissible to show bad moral character. It is certain that the credibility of a witness may be impeached by *general evidence* of bad moral character, § 20-2-4, NMSA, 1953 Comp., but no such attempt was made. It is also certain that bad moral character of a witness may be shown by eliciting from the witness specific acts of misconduct. In such case, however, the answer of the witness is conclusive of the matter under inquiry. State v. Martinez, 57 N.M. 158, 255 P.2d 987; State v. Kile, 29 N.M. 55, 218 P. 347; State v. Perkins, 21 N.M. 135, 153 P. 258.

The judgment should be affirmed. It is so ordered.

LUJAN, C. J., and McGHEE, CARMODY and MOISE, JJ., concur.